HARRY TROLL, Public Administrator in Charge of Estate of LUCIA M. LAIRD, Appellant, v. THIRD NATIONAL BANK.

In Banc, April 26, 1919.

1. **DEMURRER: General or Special.** A demurrer to the petition, which states two of the grounds therefor designated in the statute, is not a general demurrer; but if it states that "the plaintiff has no legal ground to sue," that "the petition shows that plaintiff is not entitled to recover" and that "the petition does not state facts sufficient to constitute a cause of action" it is specific, but nevertheless is broad enough to raise several questions for decision.

2. **PUBLIC ADMINISTRATOR: Right to Sue: Ancillary Administration: Admissions.** Allegations that plaintiff is public administrator of the county, that as such he took charge of and was duly appointed and qualified as ancillary administrator of the estate of a person who at and prior to her death was a resident of another state, and that he is now proceeding to administer upon said estate, stand admitted by a demurrer which states that plaintiff has no capacity to sue and that his petition does not state a cause of action; so that unless the other facts alleged show that there was no estate to be administered by an ancillary administration, the plaintiff has a right to sue. Such facts being necessarily admitted by the demurrer, the pleadings must show some other facts which disrobe the public administrator of the right to administer.

3. **ADMINISTRATION: Situs of Corporate Stock: Demurrer.** An allegation that the situs of the personal estate is in Missouri and is an asset of the estate in this State, is a legal conclusion, and is not admitted by a demurrer to the petition.

4. ———: ———: **In State of Corporation's Domicile.** Actual property represented by certificates of stock in a corporation has its situs where the corporation is, and not where the certificates chance to be. Where decedent resided and died in Illinois, owning certificates of stock in a national bank located in Missouri, the situs of the property represented by the certificates was in Missouri, although the certificates were not themselves in Missouri and have not been since decedent's death.

5. **PUBLIC ADMINISTRATOR: Right to Sue: Collateral Attack.** A public administrator who has taken charge of an estate committed to him by statute has a right to sue for the preservation of desig-

Troll v. Third Natl. Bank.

nated assets; and having instituted in the circuit court his suit for the recovery of property in this State belonging to a decedent who resided and died in another state, his right to act for the estate in Missouri cannot be challenged in such collateral proceeding. His right to so act can be questioned only in the probate court.

6. ———: **Right to Act: Debts.** If the decedent, who died in Illinois, left an estate in Missouri, it is immaterial, in determining whether the public administrator has a right to act as ancillary administrator of the domestic estate, whether or not decedent had creditors in Missouri.

7. ———: ———: **Estates of Testates: Exposure to Loss or Damage.** By the fourth clause of Section 302, Revised Statutes 1909, the public administrator is authorized to take charge of money, property, papers or other estate left in a situation exposed to loss or damage, when no other person has been appointed to administer on the same; and this clause, unlike the second and fifth, has reference to estates of testates as well as to estates of intestates, and any such property with no one in charge thereof is exposed to loss or damage.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

REVERSED AND REMANDED.

*Henderson, Marshall & Becker* for appellant.

(1) Stock in a corporation are assets in the State where the corporation is domiciled and does business. Jellnick v. Huron Copper Mining Co., 177 U. S. 1; Richardson v. Busch, 198 Mo. 186. (2) The real *situs* of assets is where the debtor resides and the assets are located. McCarty v. Hall, 13 Mo. 480; In re Ames & Company, 52 Mo. 293. (3) The fact that the stock in controversy is that of a national bank makes no difference. A national bank is organized under the act of Congress, but its domicile and habitation is in the State in which it is authorized to have its principal place of business. It cannot remove from that State to another. Sec. 5134, Tit. Ch. 1, p. 3455, U. S. Comp. Stat. 1901. (4) The matter of debt or no debts is nowhere pleaded, raised

or intimated by either the pleadings of plaintiff or defendant. It is immaterial whether there are or are not debts. Becraft v. Lewis, 41 Mo. 552; Bartlett v. Hyde, 3 Mo. 491; Crohn v. Bank, 137 Mo. App. 715; Green v. Tittman, 124 Mo. 376; State ex rel. Hounsom v. Moore, 18 Mo. App. 406; Weeks v. Jewett, 45 N. H. 540; Wood v. Bagley, 13 Wend. 453; Marshall v. King, 24 Miss. 85; Allen v. Simmons, 1 Curtis, 122; Short v. Farmer, 4 Dev. & Batt. 122; Whit v. Ray, 4 Ind. 14; Miller v. Eastman, 11 Ala. 609; Murphy v. Hanrahan, 50 Wis. 485; Bradford v. Felder, 2 McCord, Cl. 168; Naylor v. Moffatt, 29 Mo. 127. (5) The property is in Missouri, and the certificates were merely the evidence of the property. The rule of law well established is that the ancillary administrator has title to the property within confines of the state creating said ancillary administrator and that the domiciliary administrator has no title nor power, nor can he do any act effecting property, within the state of the ancillary administrator. The Illinois administrator has no title to the stock in question, and having no title in himself he cannot transfer or assign the same to any one else so as to give his assignee power to maintain an action therefor or to claim title thereto. (6) The grant of letters testamentary or letters of administration has no effect beyond the territorial limits of the state or county in which the grant was made. So, therefore, the executor or administrator can do no act in a foreign country by virtue of such letters. Enchin v. Wylie, 10 H. L. Cas. 19; Attorney-General v. Hope, 2 Cl. & F. 84; Whyte v. Rose, 48 Ecl. 842; Preston v. Melville, 8 Cl. & F. 1; Thourton v. Fowler, 3 Peere-Wms. 371; Atkins v. Smith, 2 Atk. 63; Scott v. Bentley, 1 Kay & J. 281; 1 Jur. N. S. 394; 24 L. J. Ch. 244; Taylor v. Benham, 5 How. (U. S.) 233; Harper v. Butler, 2 Pet. (U. S.) 239; Trecothick v. Austin, 4 Mason (U. S.), 16; Vaughan v. Northup, 13 Pet. (U. S.) 1; Mellus v. Thompson, 1 Cliff. (U. S.) 125; Brownson v. Wallace, 4 Blatch. (U. S.) 465; Wood v. Gold 4 McLean (U. S.), 577; Swatzel v. Swan, 3 Mason

(U. S.), 469; Bartless v. Hyde, 3 Mo. 490; Croslin v.
Baker,. 8 Mo. 437; State to use v. Porter, 9 Mo. 352;
Leakey v. Maupin, 10 Mo. 368; Hastings v. Meyer, 21
Mo. 519; Haylor's Administrator v. Moffatt, 29 Mo.
126; Hanenkamp's Administrator v. Borgonier, 32 Mo.
562; State to use v. Fulton, 35 Mo. 523; Smith v. Denny,
37 Mo. 20; Vastine v. Dinan, 42 Mo. 369; State ex rel.
v. Moore, 18 Mo. App. 406; Becraft v. Lewis, 41 Mo App.
546; Boeger v. Langenberg, 42 Mo. App. 7; McCarty v.
Hall, 13 Mo. 480; In re Henry Ames & Co., 52 Mo. 290;
McPike v. McPike, 111 Mo. 480; Green v. Tittman, 124
Mo. 376; 13 Am. & Eng. Ency. Law (2 Ed.), p. 932.

*Thos. F. Galt* for respondent.

(1) Appellant has no authority to demand of the
respondent that it turn over to him the shares of stock
prayed for.  Richardson v. Cole, 160 Mo. 372; Walworth
v. Abel, 52 Pa. St. 370; Needham v. Gillett, 39 Mich.
574; Woodhouse v. Phelps, 51 Conn. 521; Lewis v. Lyons,
13 Ill. 117. (2) The *situs* of shares of stock for the
purpose of administration is at the domicile of the owner
of the stock. Cook on Corporations, secs. 361, 375, 329,
12; Middlebrook v. Merchants Bank, 41 Barb. (N. Y.)
481, 3 Keys (N. Y.), 135; 18 Cyc. 1231; Bradley v.
Bauder, 36 Ohio St. 28; Griffith v. Watson, 19 Kan. 23;
Brown v. San Francisco Gas Light Co., 83 Cal. 429;
R. S. 1909, sec. 321, 2984; South Bend Natl. Bank v.
Lanier, 11 Wall. (U. S.) 369; Johnston v. Laftus, 103
U. S. 800; Savings Trust v. Natl. Bank, 89 Mo. 59.

GRAVES, J.—The trial court sustained a demurrer
to plaintiff's petition. Both petition and demurrer are
short, but they go to the vitals of the case, and are
material. The petition reads:

"Plaintiff states that he is, and at all the times here-
inafter stated, was the duly elected and qualified Public
Administrator of the City of St. Louis; that the defen-
dant is, and at all the times hereafter stated, was a cor-

poration duly organized under the acts of Congress of
the United States as a national bank, having its domi-
cile and residence and principal place of business in the
City of St. Louis, and authorized by said act of Congress
and by its charter to do a general banking business in
the City of St. Louis; that during her lifetime, and at
the time of her death, which occurred on September 9,
1909, Lucia M. Laird was the owner of thirty-three
shares of the capital stock of the defendant corporation,
of the par value of one hundred dollars each, but which
was of greater real or market value than the par value,
which plaintiff alleges upon information and belief to be
of the value of three hundred and twenty-five dollars a
share, and that as such owner of said stock said Lucia
M. Laird was, and her estate now is, entitled to share
in the earnings and proffits of the defendant; that said
stock ownership was evidenced by a certificate of stock,
numbered, to-wit, 5334, issued by defendant to said Lucia
M. Laird; that said Lucia M. Laird at and prior to her
death was a resident of the State of Illinois, and had her
domicile at the City of Alton, Illinois; and at the date
of her death had the certificate aforesaid in her posses-
sion at her said domicile; that said Lucia M. Laird died
at her said domicile on, to-wit, September 9, 1909, testate,
leaving valuable property in the State of Illinois, which
is now being administered upon in said State by her
executrix, and that said executrix has in her possession
the certificate of stock evidencing the right of said
Lucia M. Laird to share in the capital, earnings and
profits of defendant aforesaid, but plaintiff alleges that
the *situs* of the property, right and asset aforesaid was
and is in St. Louis, Missouri, and was and is an asset
of the estate of said Lucia M. Laird in the State of
Missouri and in the City of St. Louis, and can only be
administered upon in the City of St. Louis, and never
was assets of said estate in the State of Illinois; that on,
to-wit, June 1, 1910, plaintiff as such public adminis-
trator took charge of and duly appointed and qualified
as ancillary administrator of the estate of said Lucia

M. Laird in the City of St. Louis, Missouri, and has
ever since been and is now proceeding to administer
upon the said estate; that the title to the said thirty-
three shares of stock in the defendant corporation and
the right to share in the capital, earnings, profits and
dividends thereon of the defendant corporation passed to
and vested exclusively in plaintiff as such ancillary ad-
ministrator, on the death of said Lucia M. Laird, on
September 9, 1909; that immediately upon becoming such
ancillary administrator and taking charge of said estate
plaintiff notified defendant of such fact and defendant
agreed to recognize and treat plaintiff as such, and to
pay plaintiff all dividends on said stock and to send to
plaintiff all notices of stockholders' meetings, etc., that
heretofore plaintiff has demanded of defendant that it
issue to him as such ancillary administrator a certifi-
cate evidencing the ownership of said thirty-three shares
of stock of defendant corporation, but that defendant
has failed and refused and still fails and refuses so to
do; that since September 9, 1909, the defendant has de-
clared dividends upon the stock of said corporation, ag-
gregating large sums, the exact amount of which plain-
tiff cannot state, but which plaintiff states upon infor-
mation and belief to consist of two dividends of four
per cent each, upon the capital stock of defendant cor-
poration, and which plaintiff has demanded from de-
fendant, but defendant has failed, and refused, and still
fails and refuses to account for or pay to plaintiff.

"Wherefore, plaintiff prays that the defendant be
ordered, adjudged and decreed to disclose and state,
but not under oath, an oath being expressly waived, how
much, and when, if any, dividends have been declared by
it on the capital stock of defendant since September 9,
1909; that defendant be ordered, adjudged and decreed
to issue and deliver to plaintiff as such ancillary admin-
istrator of the estate of Lucia M. Laird, deceased, a
certificate for thirty-three shares of the capital stock
of the defendant corporation, and to pay over to plain-
tiff all dividends that have been declared by defendant

on said stock and properly applicable thereto since September 9, 1909, and that plaintiff have judgment for costs herein, and for such other and further orders and decrees as may be right and proper, and as to the court may seem fit and proper, and for general relief, and plaintiff will ever pray.''

The demurrer is, in a way a general one, and (omitting caption) reads: ''Now comes the defendant in the above entitled cause, and demurs to the petition herein filed by the plaintiff, for the reason that the said petition does not state facts sufficient to constitute a cause of action, and for the further reason that the petition shows that the plaintiff is not entitled to the relief prayed for, and for the further reason that the petition shows, upon its face, that the plaintiff is not entitled to administer upon the estate of Lucia M. Laird.''

The whole case turns upon these pleadings. What plaintiff avers as to the facts, stands confessed by the demurrer.

I. The pleadings are fully set out in the statement to the end that the exact *status* might appear. **Demurrer.** The demurrer is not what we would call a general demurrer, because it covers at least two of the recognized grounds of demurrer in our statute. [Sec. 1800, R. S. 1909.] The statute gives seven grounds for demurrer. The second one reads: ''Or, second, that the plaintiff has not legal capacity to sue.'' This ground is clearly covered by the last allegation of the demurrer.

The sixth ground of demurrer as found in the statute, supra, reads: ''Or, sixth, that the petition does not state facts sufficient to constitute a cause of action.'' This ground is clearly covered by the demurrer in this case.

There is added in the demurrer before us this language: ''and for the further reason that the petition shows that plaintiff is not entitled to the relief prayed for.'' This, we take it, is but another method

of stating that the petition does not state a cause of action.

So that to summarize the issues, as made by the pleadings, the petition is challenged (1) because it fails to state facts sufficient to constitute a cause of action, and (2) because plaintiff has not legal capacity to sue. These, however, are broad enough to raise several questions, and those we will take in such order as will best subserve brevity of opinion.

II. First, as to plaintiff's capacity to sue. The petition avers that plaintiff is the Public Administrator of the City of St. Louis. This fact stands admitted by the demurrer, as do all other well pleaded facts. The petition further alleges that plaintiff as such public administrator "took charge of and duly appointed and qualified as ancillary administrator . . . and is now proceeding to administer upon the said estate." These facts stand admitted by the demurrer, so that if the other facts pleaded do not show that there was no estate to be thus administered upon, in the manner stated above, i. e. as an ancillary administrator, then there can be no question but that the public administrator has the right to sue. In other words, there must be shown in the pleadings some facts which disrobe the public administrator of the right to administer. Such public officer is elected for the express purpose of taking charge of certain designated estates, and in the collection and preservation of them has the right to sue. So that we will have to search the petition for facts which show that this officer, in the capacity herein designated, has no authority in this particular case, and cases falling into a like class. Right here come in several contentions.

First and foremost is the *situs* of the property. It is true that the plaintiff alleges the *situs* of the property is in Missouri, and is an asset of the Laird estate in Missouri. It is suggested that this stands admitted by the demurrer. We are not

*Right to Sue.*

*Situs of Stock.*

impressed with this idea. This portion of the petition is, to our mind, but a legal conclusion drawn from the previously stated facts. Legal conclusions are not admitted by a demurrer. As to the *situs* of the property the facts pleaded show that Mrs. Laird died testate in the State of Illinois, owning these 33 shares of bank stock, and had the certificate thereof in her possession, in Illinois, to the date of her death. The question. is, was the property represented by the certificate of stock, located in Illinois, where the owner lived and held the certificate, or was it in Missouri, where the corporation was located, which corporation issued the certificate of stock. VALLIANT, J., determined this question for our Court in Banc, in Richardson v. Busch, 198 Mo. 174. The identical question involved here is too ably discussed by that learned jurist to require further elaboration here. It was a case involving the right of the Public Administrator of St. Louis to certain stock in a New York corporation, the certificate of stock being in this State. The opinion fully reviews authorities, both State and Federal, and concludes that the actual property represented by certificates of stock in a corporation has its *situs* where the corporation is and not where the certificate chances to be. The following conclusive words of Judge VALLIANT, are found at page 186 of the opinion: ''The *situs* of the interest is the *situs* of the corporation.''

So in the case at bar, when Mrs. Laird died in Illinois, the *situs* of the property interest, represented by the certificate of stock, was in St. Louis, where the corporation was domiciled. The Richardson case, supra, is a well considered case, and we can't well escape its conclusions and their effect in this case. We therefore hold that Mrs. Laird, under the admitted facts, died possessed of property in this State.

III. Having concluded that Mrs. Laird died possessed of property in this State, the next question is whether or not, under the law, the plaintiff was em-

**Collateral Attack.** powered to act. Having admitted by the demurrer that plaintiff had taken charge of the estate and was administering thereon, it might with much propriety be urged that his right to act for the estate cannot be challenged in this collateral proceeding. That question was broached in the Richardson case, supra, wherein VALLIANT, J. at page 180 of 198 Mo. said: "The first point made in the brief of appellant is that his authority as public administrator to take charge of the estate of the deceased, De La Vergne, cannot be questioned in a collateral proceeding. *That is a correct statement of the law,* but the rule of law is not involved in this case." The italics are ours.

The statement italicized is borne out by the following: Leeper v. Taylor, 111 Mo. l. c. 321, and the Missouri cases therein cited: State to use Betts v. Purdy, 67 Mo. l. c. 93; McCabe v. Lewis, 76 Mo. l. c. 296; Dunn v. Bank, 109 Mo. l. c. 90; Vermillion v. LeClare, 89 Mo. App. l. c. 55; American Car and Foundry Co. v. Anderson, 211 Fed. 301.

This case law proceeds upon the theory that where the public administrator assumes to act and does act, the question of his power to act in the given case cannot be questioned in a collateral proceeding. The determination of whether or not he is rightfully acting in a given estate is a matter for the probate court. [State to use Betts v. Purdy, 67 Mo. l. c. 93; McCabe v. Lewis, 76 Mo. l. c. 296.]

In the Anderson case, supra, a Federal case from Missouri, it is said at page 307: "It is the settled law of Missouri that the authority of a public administrator to take charge of an estate cannot be assailed collaterally. [Dunn v. German American Bank, 109 Mo. 90, 18 S. W. 1139; Leeper v. Taylor, 111 Mo. 312, 19 S. W. 955; Wetzell v. Waters, 18 Mo. 396; Richardson v. Busch, 198 Mo. 184, 95 S. W. 894, 115 Am. St. Rep. 472; Vermillion v. LeClare, 89 Mo. App. 55.]"

So that it could be with propriety held that the plaintiff having exercised his judgment in determining

to take charge of the Missouri estate of Mrs. Laird, this judgment of his, with him actually acting in the estate, could not be questioned elsewhere than in the probate court. In plain terms, could not be attacked collaterally. We have compelled, and rightfully, the probate court to appoint the person entitled to administer, where the public administrator was assuming to act. [State ex rel. v. Holtcamp, 273 Mo. 125.] But this question is not here. The question here is collateral attack.

But we do not stop here. We have held that Mrs. Laird left an estate in Missouri. Whether she had creditors here is immaterial. [Richardson v. Busch, 198 Mo. l. c. 184; Becraft v. Lewis, 41 Mo. App. l. c. 552.]

With an estate here, we find that the public administrator, in the first instance, is entitled to take possession of certain estates. [R. S. 1909, sec. 302.] The fourth clause of this section reads: "Fourth, when money, property, papers or other estate are left in a situation exposed to loss or damage, and no other person administers on the same."

What Estates.

It has been urged, that this clause has reference to estates of intestates and not to the estates of testates. The clause contains no such restrictions. The second clause of the statute does have such a restriction, as also does the fifth clause, but not so with the fourth clause. The purpose of this fourth clause was to give the public administrator the power to act for the protection of the estate, whether the party died testate or intestate. This, because the foreign administrator or executor of a person dying testate in another State acquires no right to protect the Missouri estate. Our courts are not open to him, but they are open to our public administrators, and other ancillary administrators appointed by our probate courts.

Nor will it do to say that an estate in Missouri (or elsewhere for that matter) with no one in charge thereof is not one "exposed to loss or damage" with-

in the meaning of clause four of Section 302, Revised Statutes 1909. The mere allegation of the petition that it is bank stock does not negative the idea of the property being exposed to loss or damage. Bank stock often depreciates in value in a very short time. Any estate with no administrator to look after it is exposed to loss. We think this clause clearly authorized the public administrator to act.

So that we rule: (1) that Mrs. Laird left an estate in Missouri under the facts of the petition; (2) that the petition charges and the demurrer admits that plaintiff, as public administrator, was actually in charge of the estate, and that his right to administer could not be questioned in a collateral proceeding; (3) that under clause four of Section 302, Revised Statutes 1909, the public administrator had the power to act, and for that reason his right to act could not be questioned, unless for reasons shown in the probate court, and (4) that with these matters ruled in favor of the plaintiff, we can see no good reason why he should not have the relief prayed for in his petition, if his facts upon a final trial measure up to those pleaded.

The demurrer should have been overruled. Judgment is reversed and cause remanded for disposition in accordance with this opinion. All concur, except *Blair* and *Williams, JJ.,* not sitting.